**In re Miles KARDATZKE, and wife Juanita R. Kardatzke, Debtors.**

**Bankruptcy No. 89–20465.**

United States Bankruptcy Court,
E.D. Texas,
Marshall Division.

March 22, 1990.

Joe B. Abbey, Law Offices of Joe B. Abbey, Dallas, Tex., for Creditor Trans–Exchange Corp.

J. Powers Branch, Longview, Tex., for debtor Miles Kardatzke.

## INTRODUCTION

DONALD R. SHARP, Bankruptcy Judge.

 This matter before this Court is a determination of whether a partial repossession of collateral without any subsequent sale or disposition serves as a complete satisfaction of the Creditor's claim against Debtor as to the remaining collateral. After a review of the dispositive Texas State Law, this Court is of the opinion that it does not.

## FACTUAL BACKGROUND

Debtor-in-possession, Miles R. Kardatzke and wife, Juanita R. Kardatzke, were the owners and operators of a chain of Le' Optitech stores which specialized in the sale of eyeglasses. On March 31, 1987, Debtor and Le' Optitech, Debtor's wholly owned corporation, executed a promissory note and security agreement in favor of Trans Exchange Corporation, ("TEC"). The note was executed in connection with the sale of a number of optical stores located in Texas, Oklahoma and Missouri by TEC to Debtors and their corporation. The security agreement created a security interest in the 15 stores and the common stock of Le' Optitech.

Subsequently, a default occurred in the payment of the installments on the note. In October 1988, TEC, sent notice to Debtors that it was reassuming ownership of all assets pledged to TEC in Odessa and Lubbock, Texas. These assets consisted of one store in Odessa and two stores in Lubbock, Texas. The remaining 12 stores subject to TEC's security interest were not affected. TEC's secured proof-of-claim is $233,108.00. The evidence shows that no credit has been given for the value of the foreclosed stores.

Debtor maintains that the law of the State of Texas dealing with secured transactions holds that a repossession by a creditor without subsequent sale or other disposition extinguishes in toto Debtor's obligation to said Creditor. Creditor TEC's response is that a repossession without subsequent disposition serves at best only to dispossess the Creditor of any claim to a deficiency in any of the repossessed stores.

## DISCUSSION

State law is controlling in matters dealing with the creation and enforcement of contractual liens on personal property. In Texas, the provisions governing the creation and enforcement of liens (security interests) are contained in Article 9 of the Texas Business and Commerce Code. Specifically, Creditor's remedies on default are contained in Sections 9.501 thru 9.507. V.T.C.A., Bus. and C. Sec. 9.501–9.507 *et seq.*

Pursuant to these provisions, upon debtor default, the secured party may foreclose his security interest by any available judicial procedure or elect non-judicial foreclosure remedies which are governed by Article 9 of the Code. The Creditor has the rights and remedies provided in the above enumerated sections in the security agreement.

Upon repossession, the secured party has two options with regard to the disposal of collateral. First, § 9.504 provides that the secured party may after default sell, lease or otherwise dispose of any or all of the collateral as long as it is done in a commercially reasonable manner. V.T.C.A., Bus. and C. § 9.504. Full compliance with the provisions of this section allow a secured creditor to sue for a deficiency judgment should a deficiency result from the sale. The secured creditor's second option is to accept the collateral as a full and complete discharge of the *Debtor's* obligation. V.T.C.A., Bus. and C. § 9.505. In order to exercise this option on non-consumer goods, the secured creditor is required to give written notice to the Debtor in addition to any other secured party maintaining a security interest in the collateral to be accepted in discharge of the obligation. V.T.C.A., Bus. and C. § 9.505(b). If objection to this proposal is received within 21 days of the original offer, the secured party must comply with § 9.504 and sell the collateral in a commercially reasonably manner. V.T.C.A., Bus. and C. § 9.505(b). However, barring objection, the secured

party may retain the collateral in complete satisfaction of the Debtor's obligation.

The leading case addressing the issues before this Court is *Tanenbaum v. Economics Laboratory, Inc.,* 628 S.W.2d 769 (Tex., 1982). In *Tanenbaum,* the Debtor requested that the secured creditor repossess certain substandard machinery subject to the creditor's security interest. After repossession of the collateral, creditor later determined that the machinery could not be economically repaired and then sold the machinery for scrap without notice to the Debtor. Soon after, the secured creditor attempted to assess the Debtor with a deficiency.

The *Tanenbaum* court, in analyzing the relationship between the options presented to creditors pursuant to §§ 9.504 and 9.505 of the Code, determined that failure of the creditor to comply with § 9.504 and sell the collateral in a commercially reasonable manner constituted a de facto election of the remedy under § 9.505. Finding no provision allowing a creditor to sue for a deficiency within § 9.505 the Court held that creditor's retention of the collateral was a full satisfaction of the indebtedness.

In this matter, Debtor is attempting to extend the holding in *Tanenbaum* for the proposition that a partial repossession and deemed election of § 9.505 serves to extinguish all claims that the Debtor may have in other collateral still held by Debtor. The Court is not persuaded by that argument. A careful review of the State Court Jurisprudence does not reveal any cases where the courts have been faced with the case of a partial repossession. The *Tanenbaum* Court and all other courts that have considered this question have been dealing with a repossession of all of the collateral. There is some language in *Whirlybirds Leasing v. Aerospatiale Helicopter, Inc.,* 749 S.W.2d 915 (Tex.App.—Dallas, 1988) which indicates that the Creditor, in attempting to repossess a helicopter received only the hull and not the complete helicopter. The argument of the Creditor was that this constituted an attempted repossession of the collateral since the equipment it repossessed was incomplete and

valueless. The Court rejected this argument without any discussion and disposed of the matter as a repossession of the collateral with the context of the opinion clearly indicating that the Court considered it a total repossession. My review of the Texas Jurisprudence convinces me that the state courts of Texas would not extend the *Tanenbaum* decision to the extent requested by the Debtors in this case. Such an extension would grant the Debtor an unwarranted windfall that there is no equitable or legal argument to support.

If one were to adopt the position that the *Tanenbaum* rationale applies to a partial repossession, then it would appear that the only relief Debtors would receive in this instance is to effectively convert the claim to an in rem claim against the remaining assets. The election between remedies mandated by §§ 9.504 and 9.505 of the Texas Business and Commerce Code as interpreted by *Tanenbaum* only deal with whether the Creditor has a right to a deficiency after foreclosure of all of the collateral. Therefore, the most that the *Tanenbaum* decision can do to assist the Debtor in this case is to prohibit any deficiency after the remainder of the collateral has been foreclosed upon. It seems clear that, under Texas law, the Creditor may at least exercise its lien rights to the collateral through repossession and either keep the collateral or dispose of it for the Creditor's benefit.

Although the above might very well be a result absent a bankruptcy proceeding we are faced with valuing the proof-of-claim in this proceeding which determines the amount of the secured debt remaining and the amount that the Debtor must pay to the Creditor in order to preserve the assets presently being used in this reorganization proceeding. Although this Court is aware that the *Tanenbaum* decision overruled the previous line of cases which held that there was a rebuttable presumption that the foreclosed upon property approximated the value of the debt for purposes of determining the amount of the deficiency there is no way to resolve the instant controversy without assigning a value to the assets that have been foreclosed upon. To allow the

entire debt to stand would create a windfall to the Creditor that is not warranted and, as noted above, to declare the entire debt extinguished would create a windfall to the Debtor that is not warranted. To determine the controversy before the Court a determination of the value of the repossessed collateral seems essential.

This Court would be willing to extend the decision in *Tanenbaum* to accommodate the Debtor upon a showing by Debtor that the value of the partially repossessed collateral approximated the amount of TEC's claim. However, this is not the case. The Court found the testimony by TEC's expert witness as well as the testimony by Debtor as to the value of the collateral to be less than credible. TEC estimated the value of the repossessed Odessa store to be $8,000.00 and the value of the two Lubbock stores to be $4,000.00 and $6,000.00 respectively. On the other hand, Debtor's testimony that the stores were worth approximately $125,000.00 individually was wholly unsubstantiated.

Finding neither the Debtor's or TEC's testimony concerning valuation to be credible, the Court is left with no other alternative but to approximate a value. As previously mentioned, TEC maintains a security interest of $233,108.00 in 15 Le' Optitech stores. This represents approximately $15,540.53 pro rata per store. Since no testimony was offered as to the unique nature of any of the Le' Optitech stores, the Court will divide the liability owed to TEC by Debtor by the factor of the 15 stores. The resulting amount of $15,540.53 therefore represents the liability attributable to each individual store; the three repossessed stores having an aggregate liability of $46,621.59.

■ Therefore, it is the holding of this Court that through deemed election of § 9.505 of the Texas Business and Commerce Code TEC has elected to repossess the three stores in complete satisfaction of the indebtedness owed against those stores. This indebtedness approximates $46,621.59. The Court is unwilling to extend its holding to support Debtor's contention that an election under § 9.505 serves to extinguish Debtor's total indebtedness without a showing that the collateral seized approximated the amount of the outstanding indebtedness. Therefore, it is the holding of this Court that Debtor's objection to the proof-of-claim of TEC is sustained to the extent that TEC has not credited on its proof-of-claim the amount of $46,621.59 to Debtor for the repossession and retention of the three stores in question.

However, to the extent that Debtor objects to TEC's security interest in the 12 remaining stores subject to a proof-of-claim of $186,487.07 Debtor's objection is overruled, it is so ORDERED.